UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DAWN MARIE DAVIDE and
CHRISTOPHER LEE LUTTRELL,    Case No. 16-12689 t11

    Debtors.

VINCENT P. LUJAN,

    Plaintiff,

v.    Adv. No. 17-1007 t

DAWN MARIE DAVIDE and
CHRISTOPHER LEE LUTTRELL,

    Defendants.

## OPINION ON DEFENDANT'S MOTION TO CLARIFY AND RECONSIDER

Before the Court is Defendants' Motion to Clarify and Reconsider Final Judgment. In the Motion, Dawn Davide and Christopher Luttrell ask the Court to clarify that the nondischargeable debt at issue is not owed by Luttrell. The Court will make that clarification. Defendants also ask the Court to reconsider its judgment that Davide's debt to Vincent Lujan is nondischargeable under 11 U.S.C. § 523(a)(2)(A). As the Court believes its judgment is correct, the request will be denied.

### I. PROCEDURAL HISTORY

Davide and Luttrell filed their chapter 11 case on October 31, 2016. Lujan brought this adversary proceeding on January 30, 2017, claiming that Davide's debt to him was nondischargeable because of, inter alia, fraud. The Court tried the proceeding on November 15 and 16, 2017. After taking the matter under advisement, the Court issued its opinion and final judgment on December 11, 2017. The Court found that Davide had defrauded Lujan, and therefore

ruled her debt to him nondischargeable under § 523(a)(2)(A). Davide and Luttrell filed the Motion 15 days after entry of the judgment.[1]

## II. DISCUSSION

A. Motions to Reconsider.

1. Rules 59(e) and 60(b). Depending on when the motion is filed and the type of relief sought, courts construe motions to reconsider under either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment) of the Federal Rules of Civil Procedure. *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194 (10th Cir. 2011). Here, since Defendants filed the Motion within 14 days after entry of the Court's Final Judgment, the Court will construe it as a motion to alter or amend pursuant to Rule 59(e), made applicable by Bankruptcy Rule 9023. *In re McCaull*, 2009 WL 185469, *3 (10th Cir.) (construing Debtor's motion to reconsider filed within the 14 day period prescribed by Rule 9023 as a motion to alter or amend the judgment under Rule 59); *Buchanan v. Sherrill,* 51 F.3d 227, 230 n. 2 (10th Cir. 1995) ("we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e).").

Grounds for relief under Rule 59(e) include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995)). Reconsideration may also be warranted when "the court has obviously misapprehended a party's position on the

---

[1] The 14th day was Christmas Day, a federal holiday. The Motion therefore was timely under Fed. R. Bankr. Pro. 9023.

facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination." *In re Sunflower Racing, Inc.*, 223 B.R. 222, 223 (D. Kan. 1998).

B.  Motion to Clarify.

Luttrell asks the Court to clarify that he is not personally liable for the nondischargeable judgment entered on December 11, 2017. Although the Court thinks its judgment is clear enough, it will enter a supplemental judgment that the sole judgment debtor is Davide. The Court will not address whether the debt is a community debt or a separate debt.

C.  Motion to Reconsider for Asserted Improper Evidentiary Standards.

Davide argues that the Court applied improper evidentiary standards in finding her debt nondischargeable.

1.  Judicial Notice of Conveyance to Sister-in-Law. The Court found, inter alia, that Davide conveyed the residential lots at issue (the "Lots") to her sister-in-law after mortgaging them to Mr. Lujan, but before Mr. Lujan recorded the mortgage. Davide does not dispute the accuracy of this finding. Rather, Davide complains that she was not given an opportunity to counter any inference of wrongdoing. The Court is not persuaded by this argument. On the first day of trial, the Court asked Davide's counsel whether he had any objection to the Court taking judicial notice of the docket and the claims register. He did not.[2] Taking judicial notice of the docket is routine.

The information about Davide's conveyance to her sister-in-law is in Davide's statement of financial affairs. The statement was signed by Davide under penalty of perjury and filed by Davide's trial counsel. The statement is an admission. Davide knew or should have known that it would be reasonable to question why she conveyed the Lots to an insider so soon after borrowing

---

[2] November 15, 2017 at 9:46 a.m.

$250,000 from Lujan, when she knew that the Lots were Lujan's only collateral. If there is an innocent explanation for the fact and timing of the conveyance, Davide should have given it at trial. The Court cannot be expected to let the parties know in advance every portion of the docket it may find relevant. The relevance of the conveyance to the sister-in-law should have come as no surprise.

2. <u>Possession of Original Mortgage</u>. Davide also complains that "no evidence at all was presented that Lujan left the original Mortgage with Ms. Davide at the time of execution." The Court disagrees. During Lujan's direct testimony, Lujan testified that Davide told him at the closing, and before the closing, that she would take care of recording the mortgage. Earlier in his direct examination, Lujan testified that Davide told him that she would have her title lady record the mortgage.

> Q. You testified earlier that you didn't get the mortgage recorded immediately because your understanding was that the title person that worked with Ms. Davide was going to get it recorded.
> A. Yeah, she told me that prior, and she told me that at closing.
> Q. And is it your, who took the deed, the mortgage, from closing?
> A. She took, I believe, I don't know if it was original or copies and I, there was a copy made at the bank.[3]

Given this testimony, the Court found that Davide had a recordable instrument, that Davide had repeatedly assured Lujan she would take care of recording the mortgage, and that she did not do so. Instead, six weeks after the closing she conveyed the Lots to her sister-in-law.[4] The Court will not disturb these findings.

---

[3] November 15, 2017, at about 11:30 a.m.
[4] As discussed below, within three weeks after she borrowed the $250,000 from Lujan, Davide mortgaged the Lots to the credit union. Thus, within six weeks after conning Lujan into loaning her $250,000, Davide took two actions that prevented Lujan from getting his promised collateral.

3. <u>Secretly Recorded Conversation</u>. Davide argues it was improper for the Court to admit the transcript of a secretly recorded conversation between her and Lujan because the recording was not authenticated. The argument fails.

As stated in open court, the Court admitted the transcript so Lujan could impeach Davide's testimony. Additionally, the Court's Pre-Trial Order states that "Any counsel requiring authentication of any exhibit must so notify in writing the offering counsel within 14 days before the trial date, or objection to authenticity will be waived." Davide never objected to the authenticity of the transcript or recording. Rather, Davide's only objections before trial were that the recording was obtained illegally, and was unreliable. The Court overruled these objections. She never objected to the recording's authenticity before trial, as required by the Court's Pre-Trial Order. Davide therefore waived that objection.

Further, the recording was properly authenticated. Lujan, a witness with knowledge (he made the recording), authenticated it. There really is no serious issue about the recording's authenticity.

4. <u>Prior Liens</u>. Davide next argues that it was improper for the Court to use, as evidence of fraud, her recorded and other alleged statements that the Lots were free and clear of liens, when the evidence of the encumbrances was "general and inclusive." The Court disagrees. The evidence is abundant that Davide told Lujan the Lots were free and clear of liens. While the trial evidence on title could have been better (a title report would have been nice, for example), such evidence as there was showed that the Lots were encumbered when Davide promised they

weren't.[5] Based on that evidence, the Court made a finding that the lots were encumbered, and therefore that Davide misrepresented the status of title. The Court will not disturb that finding.

D.  Motion to Reconsider For Asserted Improper Legal Standards.

Davide also claims the Court applied improper legal standards in finding her debt nondischargeable under § 523(a)(2)(A).

1.  Statements Respecting Debtor's Financial Conditions. Davide argues that the Court should not have found § 523(a)(2)(A) dischargeability because the misrepresentations related to her financial condition, which Davide asserts are excepted from § 523(a)(2)(A). The argument fails.

The relevant Code subsections are:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
…

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
(A) false pretenses, a false representation, or actual fraud, other than *a statement respecting the debtor's or an insider's financial condition*;

(B) use of *a statement in writing*--
(i) that is materially false;
(ii) *respecting the debtor's or an insider's financial condition*;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;

(italics added). Courts have noted that the language "a statement . . . respecting the debtor's or an insider's financial condition" is used in both § 523(a)(2)(A) and § 523(a)(2)(B). *In re Joelson*, 427 F.3d 700, 706 (10th Cir. 2005). The Tenth Circuit concluded that "this is 'a classic case for

---

[5] Had Lujan been mistaken about this important point, it would have been very easy for Davide to prove it at trial. She made no effort to do so.

application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Id.*, quoting *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990). The court noted that:

> any interpretation of the phrase "respecting the debtor's ... financial condition" will have opposing effects depending on whether the statement was oral or written. If the phrase is broadly construed so that more false oral statements qualify as "respecting the debtor's ... financial condition," more debts will be dischargeable under § 523(a)(2)(A) because that provision allows debts obtained by oral versions of such statements to be discharged—even though debts obtained by other false pretenses, false representations, or actual fraud may not be discharged. By contrast, a broad construction of the phrase "respecting the debtor's ... financial condition," will result in fewer debts obtained based on written versions of such statements to be dischargeable under § 523(a)(2)(B) because that provision bars the discharge of only those false statements that "respect [ ] the debtor's ... financial condition."

427 F.3d at 705.

After extensively reviewing the case law on the meaning of the phrase, the Tenth Circuit concluded:

> We hold that such false statements [i.e. statements respecting the debtor's or an insider's financial condition] are those that purport to present a picture of the debtor's overall financial health. Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. However, such statements need not carry the formality of a balance sheet, income statement, statement of changes in financial position, or income and debt statement. What is important is not the formality of the statement, but the information contained within it—information as to the debtor's or insider's overall net worth or overall income flow.

427 F.3d at 714.

*Joelson's* "strict" interpretation of § 523(a)(2) was followed by this Court in *In re Lucas*, 386 B.R. 332 (Bankr. D.N.M. 2008). *Joelson's* interpretation appears to be the majority rule throughout the circuits. *See, e.g., Rose v. Lauer (In re Lauer),* 371 F.3d 406, 413-14 (8th Cir. 2004); *In re Bandi*, 683 F.3d 671, 674 (5th Cir. 2012); *In re Cowles*, 2017 WL 6497997, at *31 (Bankr.

-7-
Case 17-01007-t    Doc 33    Filed 01/19/18    Entered 01/19/18 14:03:03 Page 7 of 11

D. Mass.); *In re Carroll*, 2017 WL 3122613, at *9 (9th Cir. BAP); *In re Robbins*, 562 B.R. 83, 107 (Bankr. E.D. Pa. 2016); *In re May,* 368 B.R. 85, at *6 (6th Cir. BAP 2007). Cf. *Engler v. Van Steinburg (In re Van Steinburg),* 744 F.2d 1060 (4th Cir. 1984) (opting for a "broad" interpretation of the phrase).

Under *Joelson* and *Lucas*, Davide's oral misrepresentations and omissions were not statements respecting her financial condition. In the Court's view, none of Davide's misrepresentations or omissions come close to "present[ing] a picture of [Davide's] overall financial health." The misrepresentations and omissions were intended to, and did, deceive Lujan, but they were nothing akin to the type of comprehensive information found in financial statements, balance sheets, or income statements. The omissions, in particular, hid Davide's intention to use Lujan's money to cure the credit union loan default and pay past-due bills. The repeated misrepresentations about the Lots had nothing to do with Davide's overall financial health. The closest Davide came to a statement respecting her financial condition was when she said that her businesses were "doing fantastic." That is not very close.

2. <u>Encumbered Lots</u>. Davide next argues that the Court abused its discretion by finding that the Lots were subject to a prior encumbrance, despite evidence that the credit union acquired its mortgage on the Lots *after* Lujan made his loan. This argument has no merit.

Lawrence Geter, the credit union's loan officer in charge of the Davide loan, testified that that the credit union had a lien on the Lots well before Lujan's loan. For example, the following testimony was elicited from Mr. Geter at trial without objection:

> Q. The bank has multiple loans to Ms. Davide and one to Homes by Dawn Davide, correct?
> A. Correct.
> Q. And you testified that those loans were in existence prior to 2015?
> A. Correct.

> Q. Did the bank have all of its, and you also testified that at the time of this closing, as we are calling it, in April, 2015, you recognize that the bank had a lien on some of the lots identified in the mortgage to Mr. Lujan, correct?
> A. Right.

Earlier, Mr. Geter had testified that one of the credit union's loans to Davide was secured by, inter alia, the Lots. He also testified that the credit union's large loan to Homes by Dawn Davide was secured by some lots owned by Davide, but he wasn't sure exactly which ones.

While the Court would have been happier with a title report, the only evidence on the issue was that the Lots were encumbered when Lujan loaned Davide the $250,000.

Further, the fact that Davide mortgaged the Lots to the credit union in May, 2015, does not mean much. It appears that the mortgage was granted as part of refinancing the credit union's loans to Davide and Homes by Dawn Davide.[6] It is not uncommon for banks and credit unions to obtain new, redundant mortgages when refinancing loans.

The May 2015 mortgage to the credit union makes Davide conduct appear more fraudulent, not less. Not only did Davide convey the Lots to her sister-in-law on May 29, 2015, thus putting them beyond Lujan's reach, she also mortgaged the Lots to the credit union on May 6, 2015, three weeks after she mortgaged them to Lujan (but before Lujan's mortgage had been recorded).

3. <u>Cause of Loss</u>. Finally, Davide argues that the Court did not adequately pinpoint the misrepresentation that caused Lujan's loss. This argument is meritless.

The Court found that "Davide made material misrepresentations and omissions to Lujan about the financial condition of her businesses, her intended use of the loan proceeds, and the title to the Lots." Opinion, p. 9. The Court also found that Lujan relied on the misrepresentations and omissions to make his ill-advised loan to Davide. The Court further found that "had Davide been

---

[6] The refinancing was made possible by Lujan's loan.

straight with Lujan, he never would have made the loan." Opinion, p. 12. As such, the Court considered the totality of Davide's misrepresentations and omissions to be the proximate cause of Lujan's loss, because they were a "substantial factor" in attracting Lujan's loan. Under settled law, "[a] false representation is the proximate cause of damage when the false representation is a 'substantial factor in determining the course of conduct that results in [the] loss,'" and the "creditor's loss [can] 'reasonably be expected to result from the creditor's reliance'" on the debtor's misrepresentation. *In re Musgrave*, 2011 WL 312883, at *9–*10 (10th Cir. BAP 2011) (quoting Restatement (Second) of Torts (1976) § 546 and § 548A)); *In re Rodriguez*, 525 B.R. 485, 493-94 (Bankr. D.N.M. 2015).

The Court's findings and conclusions do nothing more than arrive at the obvious: had Davide even been remotely honest with Lujan about how her businesses were doing; what she needed the money for; and what she intended to do with the money, Lujan would have run the other way as fast as he could. Davide knew that the truth would not get her the loan, so she resorted to the fraud outlined in the Court's opinion. The resulting loss was proximately caused by the fraud. The Court believes its analysis of causation is well within the Tenth Circuit law on the subject.

### III. CONCLUSION

The Court will enter a separate order clarifying that the nondischargeable debt is owed by Davide, not Luttrell. The Motion otherwise will be denied.

_____
Honorable David T. Thuma
United States Bankruptcy Judge

-10-
Case 17-01007-t    Doc 33    Filed 01/19/18    Entered 01/19/18 14:03:03 Page 10 of 11

Entered: January 19, 2018

Copies to: counsel of record